IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-25193

IBKUL CORP., a Florida corporation,

      Plaintiff,

v.

WILLIAM DABNEY, an individual, THE
SOUTHERN APPAREL GROUP OF
GEORGIA, LLC, a Florida limited liability
company, KENNETH GERWIT, an
individual, BARBARA GERWIT, an
individual, KB SALES CORP., a Florida
corporation, and GOTTEX MODELS (USA)
CORP., a New York corporation,

      Defendants.

_____/

## **COMPLAINT**

Plaintiffs, IBKUL CORP., a Florida corporation ("Corp." or "IBKUL"), hereby sue

Defendants, WILLIAM DABNEY, an individual ("Dabney"), THE SOUTHERN APPAREL

GROUP OF GEORGIA, LLC, a Florida limited liability company ("Southern Apparel"),

KENNETH GERWIT, an individual ("Ken"), BARBARA GERWIT, an individual, ("Barbara")

(Ken and Barbara are collectively referred to herein as the "Gerwits"), KB SALES CORP., a

Florida corporation ("KB Sales"), and GOTTEX MODELS (USA) CORP. ("Gottex"), a New

York corporation, as follows:

### **Nature of the Action**

1.      Plaintiff sues Defendants for their unlawful conspiracy to misappropriate Plaintiff's

trade secrets for their own illicit gains. Moreover, Defendants have breached multiple contractual

obligations and fiduciary duties owed to Plaintiff and have damaged Plaintiff. Finally, Defendants

have engaged in fraudulent and deceptive practices in order to misguide consumers into believing the Defendants are the rightful owners of trademarked products.

## Parties

2.      Plaintiff, IBKUL CORP. is a Florida corporation organized and existing under the laws of the state of Florida with its principal place of business located in Miami Lakes, Florida.

3.      Defendant, WILLIAM DABNEY, is an individual over the age of eighteen who resides in Palm Beach County, Florida.

4.      Defendant, THE SOUTHERN APPAREL GROUP OF GEORGIA, LLC, is a limited liability company initially organized under the laws of the state of Georgia, however, it has since merged into an existing identically named Florida entity and is therefore subject to and organized under the laws of the state of Florida.

5.      Defendant, KENNETH GERWIT, is an individual over the age of eighteen, who resides in Miami-Dade County, Florida.

6.      Defendant, BARBARA GERWIT, is an individual over the age of eighteen, who resides in Miami-Dade County, Florida.

7.      Defendant, KB SALES CORP., is a corporation organized and existing under the laws of the state of Florida.

8.      Defendant, GOTTEX MODELS (USA) CORP., is a corporation organized and existing under the laws of the state of New York.

## Venue and Jurisdiction

9.      This is a civil action for injunctive relief and damages for violations of the Lanham Act, 15 U.S.C. §1051, et seq., amongst other causes of action.

10.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. §1121(a), 28 U.S.C. §1331 and 28 U.S.C. §1338.

11.     Defendants Ken, Barbara and Dabney are subject to the personal jurisdiction of this Court inasmuch as they are residents of the state of Florida.

12.     Defendants KB Sales and Southern Apparel are subject to the personal jurisdiction of this Court inasmuch as they are entities organized under the laws of the state of Florida.

13.     Defendant Gottex is subject to the personal jurisdiction of this Court pursuant to Florida's long arm statute, §48.193, Fla. Stat., by virtue of its having engaged in the following actions:

     a.   Operating, conducting, engaging in, or carrying on a business or business venture in the State of Florida by advertising and selling products to residents in Florida via the internet; and

     b.   Committing a tortious act within the State of Florida by advertising and selling products to residents in Florida in violation of the Lanham Act;

14.     This Court further has personal jurisdiction over Gottex because it engaged in substantial and not isolated activity within the State of Florida, by *inter alia,* advertising and selling its merchandise to Florida residents via the internet.  Therefore, sufficient minimum contacts exist between Gottex and the state of Florida so as not to offend traditional notions of fair play and substantial justice under the due process clause of the Fourteenth Amendment.

15.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) in that a substantial part of the events or omissions giving rise to the claims occurred in this District.

## **General Allegations**

16.     IBKUL is a company that manufactures and sells fashionable atheslisure apparel containing patented cooling and sun protective technology called Ice-Fil™.  The texture

exclusively used by IBKUL works to keep its customers cooled and dry in a way no other product in the market is able to.

17.     IBKUL has the exclusive rights for golf, tennis, swim and ready-to wear, to make use of the trademark "Ice-Fil™," Federal Registration No. 3975111, Class Nos. 024 and 025 (the "Ice-Fil™ Mark").

18.     The "Ice-Fil™" trademark contained within the above-referenced registration is an incontestable trademark pursuant to 15 U.S.C. §1065.

19.     IBKUL Corp. was initially founded in 2016 by Jamie Handler ("Handler") and Anurag Gauba ("Gauba").

20.     Gauba and Handler are the co-presidents of IBKUL companies and actively market and sell IBKUL's products.

21.     Ice-Fil™ was initially introduced into the golf market by a company Handler used to work for.  In that prior company, Handler integrated the Ice-Fil™ technology into golf apparel and started an entirely new golf line for that company.  Handler started a new division at that prior company which experienced great success due to the use of the Ice-Fil™ technology.

22.     Ultimately, Handler decided to revive the technology and designs and he formed the new IBKUL business in order to vastly expand the use of the Ice-Fil™ technology in the golf sector.[1]  Handler obtained exclusive rights on behalf of IBKUL to use the Ice-Fil™ technology and mark.

23.     While it was understood that Handler and Gauba would be tasked with growing the business, Ken's responsibility was to facilitate customer service, print design, and commission payments to sales representatives.

---

[1] Though not material to this matter, IBKUL was initially called Icikuls.

24.     Part of the desire for Gauba and Handler to work with Ken was that Ken claimed he had access to and would book IBKUL on morning talk shows such as Good Morning America so that IBKUL could market their products to the general public.  This later turned out to be false.

25.     Ken recruited Dabney to be a sales representative of IBKUL specializing in selling women's products to specialty shops in the Southeastern region of the United States.  In February of 2019 Dabney, on behalf of his company Southern Apparel, executed the attached Independent Sales Representative Agreement (the "Dabney Agreement").  See **Exhibit "A."**  Dabney later affirmed an updated commission schedule pursuant to the Dabney Agreement in February of 2020.  See **Exhibit "B."**

26.     IBKUL Corp. is the main company that conducts the face to face sales of IBKUL's products.  IBKUL Fashion ("Fashion") was created a year after Corp. to sell the IBKUL products on the internet.

27.     Building off of the original three patterns handed to IBKUL, IBKUL now develops its own patterns, designs and dimensions that are unique and different from that of its competitors.  With those designs and patterns developed, IBKUL then incorporates the technology brought from Handler's former company into its garments.  Furthermore, IBKUL spent time and money to create the unique fit of the products it markets.

28.     When IBKUL began, no competitor was using this technology and fabric in the golf, tennis, swim and wear-to-wear marketplace.

29.     While there were a few smaller companies using the Ice-Fil™ technology, they were only doing so in the equestrian sector.  Those companies also used different fabric texture, weight and prints than that of IBKUL.

30.     The Gerwits and Dabney are salespeople for IBKUL with access to its patented technology, designs and all other information necessary to manufacture IBKUL's garments.

31.     Dabney sold products through his company, Southern Apparel.  The Gerwits used their company, KB Sales to sell IBKUL products.

32.     IBKUL provides its salespeople such as the Gerwits and Dabney with fabric silhouettes, or sample patches of garments, used as demonstratives for when the Gerwits, Dabney, and other salesmen market IBKUL's products.

33.     The Gerwits and Dabney were privy to the design process of the IBKUL products. Barbara was directly involved in that process.

34.     After the company develops its unique and proprietary designs, it gives the samples and information necessary to its salespeople so that they can sell the products.

35.     This means that IBKUL entrusted the Gerwits and Dabney with its most secret information.  In other words, IBKUL reposed trust and confidence in the Gerwits and their company KB Sales, as well as Dabney and his company Southern Apparel.

36.     In addition to patterns and designs, the Gerwits and Dabney had access to all of IBKUL's bookings by style, color, and units booked by buyers.  This means that the Gerwits and Dabney were able to identify which patterns sold to which buyers and in what quantities. Furthermore, the customer information and lists were specifically included in commission statements, showing which customers bought what products.  These lists are incredibly valuable to the profitability of IBKUL.

37.     From its inception until September of 2019, Fashion's profits were shared as follows: Ken at 20%, Barbara at 20%, Handler at 20% and Gauba at 40%.

38.     In September 2019, the majority owners of Fashion determined that the Gerwits were overcompensated for their poor performance and therefore adjusted the profit sharing as follows: Barbara at 0%, Ken at 15%, Handler at 15% and Gauba at 70%.  Ken agreed to this in writing.

39.     With regard to Corp., initially, Corp. would send 25% of all commissions earned to KB Sales and KB Sales was to pay out 12% of that 25% to its sales representatives, 4% to Handler, and retain the remaining 9%.

40.     Also in September of 2019 Ken agreed in writing to take a reduced commission percentage from Corp.

41.     It was around this time that the relationship between the Gerwits and IBKUL began to sour.  Ken made it expressly clear to Handler that he did not agree with the way Handler was operating the business of IBKUL.  Ken explained that he did not like the direction of the brand itself, including the expansion of the product line and overall growth of the business into the broader athleisure market.

42.     The deterioration in their relationship was the culmination of many issues, however, they stemmed from Ken's apparent disinterest in IBKUL and its business.

43.     The Gerwits' disinterest was evident by their refusal to take and/or return IBKUL customer calls routed to their KB Sales phone number and their repudiation to address their sales representatives' commission issues with IBKUL.

44.     Because of their utter disregard for the business and affairs of IBKUL, the responsibility fell on Handler's and Gauba's shoulders to maintain the stability and goodwill of IBKUL with its buyers and to maintain a harmonious and peaceful relationship with the rest of the sales team.

45.     Because of Ken's (and ultimately Barbara's and KB Sales') absolute failure to perform the tasks assigned, their profit share and commissions were reduced as described above and their job responsibilities were largely given to Handler.  This is why Ken agreed to forfeit a portion of his commission to Handler.

46.     All the while, Dabney grew frustrated because IBKUL rejected his demand to split the company and provide him with a considerable amount of control.

47.     Shortly after these disagreements, output and sales from Dabney and the Gerwits abysmally fell.  The Gerwits and Dabney ultimately resigned in June of 2020.

48.     Shortly after the Gerwits and Dabney resigned from IBKUL, Handler and Gauba attended a trade show in West Palm Beach, Florida, to market the IBKUL Products.

49.     At that trade show, as well as another in Estero, Florida, regular buyers of IBKUL approached Handler and explained that Gottex solicited them and offered products that clearly mimicked and copied almost everything IBKUL had been in the process of developing and selling (the "Infringing Products").

50.     IBKUL has investigated buyers of the Infringing Products, and at least one of those buyers has advertised that the Infringing Products are made with the Ice-Fil™ technology and has used the Ice-Fil™ Mark as a part of those advertisements.  Upon information and belief, the Defendants told those buyers that they used the Ice-Fil™™ technology and that the buyers should market the knock-off products as such.

51.     Following this discovery, IBKUL investigated further and obtained a copy of the 2021 S/S Gottex Lifestyle Collection Catalogue.

52.     The Gottex Catalogue displayed new products that it never had before, including clothing patterns identical to that of IBKUL.  More egregious was the fact that the new Gottex

products featured IBKUL's patented Ice-Fil™ technology, however, Gottex (knowing of the patent) renamed the technology to "Dry-Ice."

53.    IBKUL was in talks with Dillards about selling Dillards a specific new pineapple pattern which it had not sold before.  Only the members and employees of IBKUL were privy to this design.  This never materialized due to COVID.  Since that time, Gottex has started selling the identical pineapple pattern which would not have been otherwise available or known to the public due to its non-production.

54.    This unapologetic rip-off of IBKUL's products was, upon information and belief, the result of Dabney and the Gerwits' theft of IBKUL's technology and patterns.

55.    This theft and rebranding of IBKUL's products has caused confusion in the marketplace to where regular customers of IBKUL mistakenly believed that Gottex's products were actually IBKUL's.

56.    Dabney and the Gerwits have now created an identical clothing line to that of IBKUL and are selling them using the Gottex label.  They were only able to create this clothing line because they were privy to the confidential and proprietary trade secrets of IBKUL.  Furthermore, upon receipt of his commission statements, Defendant Ken was able to obtain confidential and protected customer information showing which customers were the best to sell to, and what products were sold to which customers.

57.    Their theft is intolerable and the damages IBKUL experiences on a daily basis continue to compound.

58.    All conditions precedent to this action have been satisfied or otherwise waived.

59.     Plaintiffs have been required to retain undersigned counsel and have agreed to pay Weiss Serota Helfman Cole & Bierman, P.L. its reasonable attorney's fees for the prosecution of this action.

## COUNT I – TRADEMARK INFRINGEMENT, 15 U.S.C. §1114 (Against all Defendants)

Plaintiff hereby sues Defendants for their trademark infringement, and repeats and realleges the allegations in paragraphs 1 through 59 as if fully stated herein:

60.     Defendants, directly or through their agents, have sold and continue to sell Infringing Products and represented that the Infringing Products contain the Ice-Fil™™ technology using the name "Dry-Ice."  Ironically, Dry Ice was a name discussed by Handler, Gauba and the Gerwits before choosing to continue using the name Ice-Fil™.  Furthermore, upon information and belief, Defendants have advised buyers that when they sell the Infringing Products to third-parties, they should advertise same as containing Ice-Fil™, while using the Ice-Fil™™ Mark.  This infringes upon IBKUL's trademark rights pursuant to the exclusive rights it has to the Ice-Fil™™ Mark.

61.     These infringements, *inter alia*, arise from sales by Defendants either directly through their representatives, agents, licensees, to retailers, and other ultimate consumers.

62.     The Defendants have not obtained authority, permission, or any form of license from IBKUL to market or sell through interstate commerce or otherwise, the Infringing Products and market them as containing the Ice-Fil™ technology

63.     IBKUL, its predecessor in interest, licensees and licensors developed, adopted and began using the Ice-Fil™ Mark in interstate commerce before Defendants adopted and began using the Ice-Fil™ Mark.

64.     Defendants' use of IBKUL's Ice-Fil™ Mark is without IBKUL's required authorization.

65.     The use by Defendants of the Ice-Fil™ Mark is identical to IBKUL's trademark and is likely to cause purchasers to be confused as to the source of the Infringing Products.

66.     By virtue of the actions of Defendants, there is a likelihood of confusion between IBKUL's authorized products and Defendants' Infringing Products.

67.     Defendants' conduct constitutes an infringement on IBKUL's exclusive rights to the registered Ice-Fil™ Mark under 15 U.S.C. §1114 of the Lanham Act.

68.     Upon information and belief, Defendants have acted knowingly and intentionally in misappropriating the Ice-Fil™ Mark in an effort to trade off the goodwill established by IBKUL in the golf and athleisure markets.

69.     Defendants will continue to infringe unless enjoined by this Court.

70.     IBKUL has no adequate remedy at law and will suffer irreparable injury to its business, reputation, and goodwill unless Defendants' unlawful conduct is enjoined by this Court.

71.     The imposition of an injunction by this Court will serve the public interest.

72.     Defendants' conduct is the actual and proximate causes of the damages suffered by IBKUL.

WHEREFORE, Plaintiff IBKUL, by and through its undersigned counsel, demands judgment against Defendants as follows:

a.      Imposition of a temporary and/or permanent injunction against Defendants prohibiting Defendants from manufacturing, importing, exporting, marketing, advertising distributing and selling the Infringing Products similar products under Plaintiff's Ice-Fil™ Mark;

b.      A written report, in accordance with 15 U.S.C. §1116, filed with the Court and served on counsel for Plaintiffs within ten (10) days from the entry of any injunction, setting forth in detail the manner and form in which Defendants have complied with the terms of the injunction;

c.      The delivery by the Defendants, their agents, employees, and all holding with, through or under them, or anyone acting on their behalf, to be impounded during the pendency of this action, of all articles alleged to infringe on Plaintiff's registered trademark;

d.      The delivery by Defendants and their agents, employees, and all holding with, through or under them, or anyone acting on their behalf, for destruction following a final decision in this action, of all infringing materials;

e.      Damages as the Court shall deem just and proper under 15 U.S.C. §1117 and any other provisions of the Lanham Act, including, all of Defendants' profits from the sale of the Infringing Products and all damages incurred by Plaintiff as a result of Defendants' infringement;

f.      Reasonable attorneys' fees and costs incurred in this action; and

g.      Such other and further relief as this Court deems just and proper.

## COUNT II – TRADE DRESS INFRINGEMENT
## LANHAM ACT §43(a) (Against all Defendants)

Plaintiff hereby sues Defendants for their trade dress infringement, and repeats and realleges the allegations in paragraphs 1 through 59 as if fully stated herein:

73.     The IBKUL Products are inherently distinctive in that they use a special light fabric for which IBKUL has invested substantial monies in developing, in conjunction with identifiable clothing patterns and materials that are known to be sold by IBKUL.

74.     Moreover, the IBKUL Products make use of the Ice-Fil™ technology and are marketed in conjunction with and making use of the Ice-Fil™ Mark. This makes the IBKUL products inherently distinctive and carrying secondary meaning within the marketplace.

75.     In the minds of the public, the IBKUL Products belong to IBKUL.

76.     The trade dress of the IBKUL Products is primarily non-functional.

77.     The trade dress of the Defendants' Infringing Products is confusingly similar to that of the IBKUL Products.

78.     Defendants' trade dress infringement of IBKUL's Products is the proximate and actual cause of the damages experienced by IBKUL.

WHEREFORE, Plaintiff IBKUL, by and through its undersigned counsel, demands judgment against Defendants for damages in an amount to be determined at trial, the award of its reasonable attorney's fees, and the granting of such other and further relief as this Court deems just and proper.

## COUNT III – UNFAIR COMPETITION, 15 U.S.C. §1125(a) (Against all Defendants)

Plaintiff hereby sues Defendants for their unfair competition pursuant to 15 U.S.C. §1125(a), and repeats and realleges the allegations in paragraphs 1 through 59 as if fully stated herein:

79.     Defendants by their unauthorized appropriation and use of the Ice-Fil™ Mark, have engaged, and are continuing to engage in acts of wrongful deception to the purchasing public, wrongful designation as to the source and sponsorship of goods and the wrongful deprivation of IBKUL's reputation.

80.     Defendants willfully and deliberately uses in commerce, words, terms and names which are likely to cause confusion, mistake, or to deceive as to the affiliation, connection or commercial activities of IBKUL.

81.     In or around 2020, Defendants began marketing, selling and distributing the Infringing Products under the Ice-Fil™ Mark around the country resulting in consumer confusion as to the source of the Infringing Products.

82.     Such conduct constitutes an unfair trade practice and unfair competition pursuant to 15 U.S.C. §1125(a) of the Lanham Act.

83.     As a direct and proximate result of Defendants' aforementioned misconduct IBKUL has incurred damages.

84.     IBKUL has no adequate remedy at law and will suffer irreparable injury to its business, reputation and goodwill unless Defendants' unlawful conduct is enjoined by this Court.

85.     The imposition of an injunction by this Court will serve the public interest.

86.     Defendants' conduct has caused IBKUL to suffer actual damages in an amount to be determined at trial.

WHEREFORE, Plaintiff IBKUL, by and through its undersigned counsel, demands judgment against Defendants as follows:

a.      Imposition of a temporary and/or permanent injunction against Defendants prohibiting them from manufacturing, importing, exporting, marketing, advertising distributing and selling the Infringing Products and similar products making use of the Ice-Fil™ Mark;

b.      A written report, in accordance with 15 U.S.C. §1115, filed with the Court and served on counsel for IBKUL within ten (10) days from the entry of any injunction,

setting forth in detail the manner and form in which Defendants have complied with the terms of the injunction;

c.      The delivery by the Defendants, their agents, employees, and all holding with, through or under them, or anyone acting on their behalf, to be impounded during the pendency of this action, of all articles alleged to infringe on the Ice-Fil™ Mark;

d.      The delivery by Defendants, their agents, employees, and all holding with, through or under them, or anyone acting on their behalf, for destruction following a final decision in this action, of all infringing materials;

e.      Damages as the Court shall deem just and proper under 15 U.S.C. §1117 and any other provisions of the Lanham Act, including, all of Defendants' profits from the sale of the Infringing Products and all damages incurred by IBKUL as a result of Defendants' actions and/or statutory damages;

f.      Reasonable attorneys' fees and costs incurred in this action; and

g.      Such other and further relief as this Court deems just and proper.

## COUNT IV – VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (Against all Defendants)

Plaintiff hereby sues Defendants for their violations of Florida's Deceptive and Unfair Trade Practices Act, and repeats and realleges the allegations in paragraphs 1 through 59 as if fully stated herein:

87.      This is an action for damages for violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§501.201 to 501.213).

88.      Part II of Chapter 501, Florida Statutes, and specifically Section 501.204, Florida Statutes, prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts in the conduct of any trade or commerce.

89.     This Statute is to be liberally construed to promote the designated statutory policy stated in Section 501.202(2): "To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

90.     As amended in 2001, this statute provides that a business corporation may bring an action for declaratory and injunctive relief, damages and attorney's fees pursuant to section 501.211, Florida Statutes.

91.     Defendants have engaged in unfair or deceptive acts or practices and unfair competition as described more particularly above.  Specifically, Defendants' deceptive use of the "Ice-Fil™" Mark, as well as their clear efforts to copy the IBKUL Products and turn them into the Infringing Products constitutes fraudulent and unconscionable business practices and permit Defendants to undertake misleading advertising and representations, thereby competing unfairly with IBKUL in violation of the laws of Florida.

92.     Ken Gerwit actually represents to buyers that he is the "founder" of IBKUL who has chosen to leave the company.  That is fraudulent and misleading in and of itself.  He is one of the original employees but certainly not the founder, creatively or monetarily.  Moreover he does not have equity in IBKUL and did not at the time of its founding.

93.     Defendants' promotion and offering of the Infringing Products is likely to cause confusion, mistake, and/or deception and/or to give the false and misleading impression that the goods offered or sold by Defendants constitute goods that originate with or are licensed by IBKUL or that Defendants are a subsidiary or in some way associated with, connected or related to IBKUL.

94.     The Defendants are giving the false impression that they are manufacturing IBKUL Products containing the Ice-Fil™ technology.  By their use of copying and using the identical fonts and dress, Defendants are giving the false impression they are IBKUL.

95.     Upon information and belief, Defendants' actions have been committed intentionally with the knowledge that such actions are likely to cause confusion, or to cause mistake or to deceive.

96.     The aforesaid acts of Defendants constitute unfair competition and deceptive trade practices by Defendants in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.,* and the common law of Florida.

97.     IBKUL has been irreparably injured by Defendants' willful acts, and will continue to suffer injury unless this Court enjoins Defendants from continuing such wrongful acts.

98.     IBKUL has no adequate remedy at law.

WHEREFORE, Plaintiff IBKUL, by and through its undersigned counsel, demands judgment against Defendants as follows:

    a.      Imposition of a temporary and/or permanent injunction against Defendants prohibiting Defendants from manufacturing, importing, exporting, marketing, advertising distributing and selling the Infringing Products and similar products;

    b.      The delivery by the Defendants, their agents, employees, and all holding with, through or under them, or anyone acting on their behalf, to be impounded during the pendency of this action, of all Infringing Products;

    c.      The delivery by Defendants, their agents, employees, and all holding with, through or under them, or anyone acting on their behalf, for destruction following a final decision in this action, of all Infringing Products;

d.      Damages as the Court shall deem just and proper;

e.      Reasonable attorneys' fees and costs incurred in this action; and

f.      Such other and further relief as this Court deems just and proper.

**COUNT V – MISAPPROPRIATION OF TRADE SECRETS (Against all Defendants)**

Plaintiff hereby sues Defendant for their misappropriation of trade secrets, and repeats and realleges the allegations in paragraphs 1 through 59 as if fully stated herein:

99.      While working as salespeople for IBKUL, Defendants had access to IBKUL's designs, dimensions, patterns, Ice-Fil™ technology, marketing materials, and other confidential information including known customer lists and purchaser demographics with regard to the products sold by IBKUL (the "IBKUL Trade Secrets").

100.      This gave Defendants the blueprint to identically recreate any IBKUL product using IBKUL Trade Secrets.

101.      As such, Defendants had access to IBKUL's protected trade secrets.[2]

102.      IBKUL did not make its technology and design specifications to the general public.

103.      IBKUL took steps to maintain the secrecy of its products and the IBKUL Trade Secrets.   IBKUL required its independent consultant/salespeople to enter into agreements recognizing the secrecy of its proprietary information.

104.      Nevertheless, the Defendants, without express or implied consent by IBKUL, and in an effort to directly compete with IBKUL and undercut its profits, disclosed the IBKUL Trade Secrets to at least one third-party manufacturer for their own gain.

---

[2] A "trade secret" is "information, including a formula, pattern . . . method, technique or process" that "derives independent economic value, actual or potential, from not being generally known . . . by other persons who can obtain economic value from its disclosure or use" and where its secrecy is maintained.  §688.02, Fla. Stat.

105.    Southern Apparel acquired the IBKUL Trade Secrets under circumstances giving rise to a duty maintain their secrecy.  This duty was created by Section 7 of the Dabney agreement which states the following:

> **7. Proprietary Information.**    All financial, design, labeling, engineering, sales, marketing or other information disclosed by [IBKUL Corp.] to [Southern Apparel] as a consequence of [Southern Apparel's] relationship with [IBKUL Corp.] shall be treated by [Southern Apparel] as [IBKUL Corp's.] trade secrets and shall not be disclosed by [Southern Apparel] to any other person, firm or entity during the term of this Agreement or thereafter, without the prior written consent of [IBKUL Corp.], except to the extent that such information is in the public domain at the time of its disclosure to [Southern Apparel] or thereafter becomes in the public domain through no fault of [Southern Apparel].  This provision shall be cumulative with any like or similar Agreement executed by [Southern Apparel] for the benefit of [IBKUL Corp.].

106.    As fiduciaries and salespeople of IBKUL, Dabney, the Gerwits, and KB Sales had access to IBKUL's trade secret information as stated herein.

107.    All Defendants knew that they were being entrusted with IBKUL's protected trade secret information to aid them in their ability to make sales on behalf of IBKUL, and that they had a duty to maintain the secrecy of that information.

108.    Instead, they misappropriated the IBKUL Trade Secrets by, upon information and belief, providing them to a third-party manufacturer and selling them under different label for Defendants' own economic gain, much to the detriment of IBKUL.

109.    The IBKUL Trade Secrets derive independent economic value as they are not known to the general public and are not readily ascertainable through proper means.

110.    This misappropriation of trade secrets was willful and malicious.

111.    As a result of the misappropriation of IBKUL's trade secrets, IBKUL has been damaged.

WHEREFORE, Plaintiff IBKUL, by and through its undersigned counsel, demands entry of judgment against Defendants as follows: (1) for twice the amount of their damages pursuant to §688.004(2), Fla. Stat., (2) injunctive relief pursuant to §688.003, Fla. Stat., (3) attorney's fees pursuant to §688.005, Fla. Stat., (5) costs, (6) prejudgment interest, and (7) the granting of such other and further relief as this Court deems just and proper.

## COUNT VI – THEFT (Against all Defendants)

Plaintiff hereby sues Defendants, and repeats and realleges the allegations in paragraphs 1 through 59 as if fully stated herein:

112.    While acting as salespeople and fiduciaries of IBKUL, Defendants all had access to the IBKUL Trade Secrets.

113.    The IBKUL Trade Secrets are not information available to the general public.

114.    Defendants knowingly obtained and used, or endeavored to obtain and use, the IBKUL Trade Secrets with intent to temporarily or permanently deprive IBKUL of their right to benefit from the IBKUL Trade Secrets.

115.    Furthermore, (and as fully described above) Defendants knowingly obtained and used, or endeavored to obtain and use the IBKUL Trade Secrets with intent to, either temporarily or permanently, appropriate the IBKUL Trade Secrets for their own use or to the use of another not entitled to the use of the IBKUL Trade Secrets.

116.    Accordingly, Defendants have stolen the IBKUL Trade Secrets and have committed theft within the meaning of §§812.014 and 772.11, Fla. Stat.

117.    Defendants' theft of the IBKUL Trade Secrets are the proximate and actual cause of Plaintiff's damages.

WHEREFORE, Plaintiff IBKUL, by and through its undersigned counsel, demands entry of judgment against Defendants as follows: (1) treble damages pursuant to §772.11, Fla. Stat., (2) injunctive relief pursuant to §812.035, Fla. Stat., (3) the award of reasonable attorney's fees pursuant to §772.11, Fla. Stat., (4) costs, (5) prejudgment interest, and (6) the granting of such other and further relief as this Court deems just and proper.

### <u>COUNT VII – BREACH OF CONTRACT – (Against Southern Apparel)</u>

Plaintiff hereby sues Defendant Dabney, and repeats and realleges the allegations in paragraphs 1 through 59 as if fully stated herein:

118.    As stated above, IBKUL Corp. and Southern Apparel entered into the Dabney Agreement whereby Southern Apparel agreed to maintain the IBKUL Trade Secrets.

119.    Section 7 of the Dabney Agreement states as follows:

> **7. Proprietary Information.**   All financial, design, labeling, engineering, sales, marketing or other information disclosed by [IBKUL Corp.] to [Southern Apparel] as a consequence of [Southern Apparel's] relationship with [IBKUL Corp.] shall be treated by [Southern Apparel] as [IBKUL Corp's.] trade secrets and shall not be disclosed by [Southern Apparel] to any other person, firm or entity during the term of this Agreement or thereafter, without the prior written consent of [IBKUL Corp.], except to the extent that such information is in the public domain at the time of its disclosure to [Southern Apparel] or thereafter becomes in the public domain through no fault of [Southern Apparel].   This provision shall be cumulative with any like or similar Agreement executed by [Southern Apparel] for the benefit of [IBKUL Corp.].

120.    Nevertheless, Southern Apparel disclosed these trade secrets to at least one direct competitor of IBKUL.

121.    That direct competitor now manufactures and markets products identical in nearly every way to that of IBKUL products by using the misappropriated IBKUL Trade Secrets.

122.    Southern Apparel's breach of the Dabney Agreement is the actual and proximate cause of IBKUL's damages.

WHEREFORE, Plaintiff IBKUL, by and through its undersigned counsel, demands entry of judgment against Defendant Southern Apparel for damages as a result of its breach of the Dabney Agreement, and the granting of all other relief as this Court deems just and proper.

## COUNT VIII – BREACH OF FIDUCIARY DUTY (Against the Gerwits)

Plaintiff hereby sues Defendants Ken and Barbara, and repeats and realleges the allegations in paragraphs 1 through 59 as if fully stated herein:

123.    The Gerwits were intricately involved in the creation of the IBKUL brand.

124.    The Gerwits shared in the profits of IBKUL Corp., the more profitable arm of the IBKUL brand.

125.    The Gerwits were entrusted with the secrets of IBKUL, including but not limited to the proprietary technology used in its products, the patterns and materials that contribute to the success of IBKUL, as well as the successful marketing and sales information, including but not limited to its customer lists, that would not otherwise be available to the general public.

126.    Accordingly, IBKUL reposed trust and confidence in the Gerwits.

127.    Nevertheless, the Gerwits breached that trust by stealing the IBKUL Trade Secrets and using a competitor to undercut IBKUL's profits to the benefit of the Gerwits and to the detriment of IBKUL.

128.    The Gerwits' actions are the proximate and actual causes of IBKUL's damages.

WHEREFORE, Plaintiff IBKUL, by and through its undersigned counsel, demands judgment against Defendant Ken and Defendant Barbara for damages, and the granting of such other and further relief as this Court deems just and proper.

## COUNT IX – CIVIL CONSPIRACY (Against the Gerwits and Dabney)

Plaintiff hereby sues Defendants Ken, Barbara and Dabney for their civil conspiracy, and repeat and reallege the allegations in paragraphs 1 through 59 as if fully stated herein:

129.   Ken, Barbara and Dabney entered into a conspiracy to steal misappropriate the IBKUL Trade Secrets obtained while selling IBKUL's products.

130.   Specifically, after receiving the IBKUL Trade Secrets, the Gerwits and Dabney brought them to at least one non-party manufacturer so that that non-party manufacturer could produce identical products at a lower price.  This would enrich the Gerwits and Dabney at the expense of IBKUL.

131.   This misappropriation and theft of the IBKUL Trade Secrets is an unlawful act that was done in furtherance of the Gerwtis' and Dabney's quest to undercut IBKUL and damage the IBKUL companies and brand.

132.   The Gerwits' and Dabney's actions and conspiracy are the proximate and actual causes of IBKUL's damages.

WHEREFORE, Plaintiff IBKUL, by and through its undersigned counsel, demands judgment against Defendant Ken, Defendant Barbara and Defendant Dabney for damages, and the granting of such other and further relief as this Court deems just and proper.

## COUNT X – CIVIL CONSPIRACY (Against the Gerwits, Dabney and Gottex)

Plaintiff hereby sues Defendants Gottex, Ken, Barbara and Dabney for their civil conspiracy, and repeats and realleges the allegations in paragraphs 1 through 59 as if fully stated herein:

133.   Ken, Barbara and Dabney entered into a conspiracy to sell knock-off versions of the IBKUL Products as though they make use of the trade dress and marks belonging to IBKUL.

134.    Specifically, after receiving the IBKUL Trade Secrets, the Gerwits and Dabney brought them to at least one non-party manufacturer, Gottex, so that Gottex could produce seemingly identical products at a lower price.  This would enrich Gottex, the Gerwits and Dabney at the expense of IBKUL.

135.    This misappropriation, infringement and theft of the IBKUL Trade Secrets are unlawful acts that were done in furtherance of Gottex, the Gerwtis' and Dabney's quest to undercut IBKUL and damage the IBKUL companies and brand.

136.    Gottex, the Gerwits' and Dabney's actions and conspiracy are the proximate and actual causes of IBKUL's damages.

WHEREFORE, Plaintiff IBKUL, by and through their undersigned counsel, demands judgment against Defendants Gottex, Ken, Defendant Barbara and Dabney for damages, and the granting of such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs demand trial by jury on all issues so triable.

Dated this 21st day of December, 2020.

> WEISS SEROTA HELFMAN
> COLE & BIERMAN, P.L.
> *Attorneys for the Plaintiff*
> 1200 N. Federal Hwy., Ste. 312
> Boca Raton, Florida 33432
> Phone: (561) 835-2111
>
> By: */s/ Howard D. DuBosar*
> Howard D. DuBosar; Fla Bar No. 729108
> HDuBosar@wsh-law.com
> KDoyle@wsh-law.com
> Harrison R. DuBosar; Fla Bar No. 1002241
> HRDuBosar@wsh-law.com
> TNovak@wsh-law.com